J-S27043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: V.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: R.D., JR., FATHER | : | |
| | : | |
| | : | No. 578 MDA 2023 |

Appeal from the Order Entered March 24, 2023
In the Court of Common Pleas of York County
Juvenile Division at No(s):  CP-67-DP-0000093-2023

BEFORE:  BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:          **FILED: OCTOBER 2, 2023**

R.D., Jr. ("Father"), appeals from the order determining that he perpetrated abuse against his daughter, V.D., born in March 2008, and adjudicating V.D. dependent.[1]  We affirm.

The trial court summarized its findings of fact as follows:

On January 17, 2023, [the York County Office of Children, Youth, and Families ("the Agency")] received a [child protective services ("CPS")] referral regarding concerns of physical abuse by creating a reasonable likelihood of bodily injury to a child through act or failure to act with ["Father"], as the alleged perpetrator.

The allegations received were that at approximately 2:30 A.M. on that day, [F]ather got into a physical altercation with a paternal cousin and during that time brandished a handgun, racked it, and was waving it around/pointing it at people in the room, in the presence of [M]other, and [V.D. (hereinafter, "the January 17th incident").]

_____

[1] M.D. ("Mother") did not separately appeal or file a separate brief in support of this appeal.  Mother, however, submitted a letter indicating that she joins in Father's brief.

Mother was not able to immediately call 911 out of fear of [F]ather's reaction, so later in the day she called police and reported the incident[.  Mother talked to the responding officer, Officer Zachary Werner ("Officer Werner"), and gave a written statement to the police.  A]s a result, [F]ather was subsequently arrested and charged.  As a term of his bail, [F]ather was not permitted any direct or indirect contact with [the] victims or witnesses or to return to the[ family] residence.

On January 18, 2023, the [Agency caseworker, Ashley Althoff ("Althoff")] met with  [V.D. and Mother].  Mother informed her . . . that V.D. had not spoken since she returned to the home yesterday and [would] only communicate by nodding yes or no. During the home visit, [M]other indicated that there were other children in the home at the time of the [January 17th] incident, but that the only child present [during the argument] was V.D. and [an] adult sister.  Mother indicated that [F]ather currently was in possession of the weapon, because he had taken it with him when he left.  Mother further reported that she and the minor child, V.D., were scared to be in the home again.  She indicated that she had a concealed carry permit and that she has a firearm in the home.

Mother stated that this was not the first[ ]time [F]ather physically abused her; it was only the first time that he used a firearm.  Mother reported that [F]ather has previously given her bruises, black eyes, and on one occasion broke her collarbone. Mother indicated at that time that she did not pursue a [protection from abuse order] due to the current bail conditions; however, she also stated that she did not want the no contact bail provision to continue and that it was [F]ather's decision whether he returned to the home or not.  At that time, she said that she'd been with [F]ather for [eighteen] years and would not just "throw away" their marriage.  Mother stated that they had a lot of things to work on but that this was all a "big commotion" and an "accident."  Mother told the caseworker that [F]ather would be moving back into the home after [his p]reliminary [h]earing, because she was dropping the charges.

[Althoff] then confirmed again with [M]other that [F]ather pointed a gun at her and threatened to shoot her during the incident, which [M]other confirmed he did . . ..

Trial Court Opinion, 5/11/23, at 2-3 (internal citation and brackets omitted).

The Agency obtained an emergency order for protective custody of V.D., filed a dependency petition based on the January 17th incident,[2] and subsequently petitioned the trial court to schedule a hearing for a finding of abuse. Mother and Father obtained separate counsel.

At the adjudication hearing, the trial court admitted as an exhibit the following written and signed statement Mother gave to police:

> I was sitting with [S., Father's cousin] talking about things that have been going on between myself and [Father]. [Father] woke up very mad. I ran out of the room hid in my kids room telling them not to tell [Father] where I was [Father] was waving gun around then managed to get out of the house with my two daughters [V.D.] and [B.] called a friend to come pick us up I heard [Father] say he was gonna kill me.

Agency's Exhibit 1 (Mother's statement to police signed and dated January 17, 2023); *see also* N.T., 3/24/23, at 12 (indicating Mother's admissions that she wrote and signed the statement to police).

Officer Werner testified that he responded to the home after police received a report of the January 17th incident. Mother told him that during the January 17th incident, Father got a handgun and was "waving the gun around at everyone in the room," including herself, V.D., B., and Father's cousin. N.T., 3/24/23, at 30-32. Officer Werner stated that V.D. did not want

_____

[2] The Agency apparently obtained emergency custody of, and filed dependency petitions as to, three other children in the home. The trial court appointed a guardian *ad litem* for all children, including V.D. V.D. is the only child subject to this appeal.

to speak to him about the incident and seemed "pretty shaken up." *Id*. at 32.

Althoff, the Agency caseworker who met with Mother and V.D. on January 18, 2023, the day after the January 17th incident, testified that Mother reported that Father "pulled out a gun, was waving it around[,]" and "[a]t one point, it was pointed at V.D. and [M]other." *Id*. at 53. Althoff testified that V.D. was "in a state of shock[,]" did not speak to her, and was staring at the corner of the wall. *Id*. at 54. When Althoff interviewed V.D. in February 2023, V.D. reported that Father had a handgun during the January 17th incident and pointed it at her. *See id*. at 58-59. V.D. told Althoff that she was afraid of Father, did not feel safe with him, and did not want to live with him. *See id*. at 58-69.

Mother testified at the hearing and specifically denied all of her prior reports about Father having a gun, pointing it at her, and threatening to kill her. *See id*. at 11, 14. Mother acknowledged, however, that V.D. did not speak for two or three days after the January 17th incident. *See id*. at 14.

V.D. testified *in camera* that she was asleep during the January 17th incident and not actually present during the argument. *See id*. at 48. V.D. told the court she wanted to go home, missed Father, and would feel safe at

home with him because she realized that "he would never do anything . . . to [hurt her]." *Id*. at 50.[3]

At the conclusion of the hearing, the trial court adjudicated V.D. dependent and concluded Father perpetrated abuse by waving around a loaded gun during the January 17th incident and creating a reasonable likelihood of V.D. suffering bodily injury. *See* N.T., 3/24/23, at 92-93.[4] The court entered the order memorializing its findings and conclusions on March 24, 2023. Father timely appealed and filed a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The court filed a responsive opinion.

Father raises the following issue for our review:

---

[3] Both Mother and V.D. explained they obtained information about the January 17th incident from B. *See* N.T., 3/24/23, at 12, 48. Mother attacked B.'s reliability, and V.C. stated she no longer believed B.'s account of the January 17th incident. *See id*. at 12 (referring to B. as a drug addict), 51 (referring to B. as a liar).

Father elected not to testify at the hearing due to the pending criminal charges. We note that Father asserts the criminal matter resulted in a summary citation for disorderly conduct. *See* Father's Brief at 6.

[4] At no point during the presentation of the Agency's evidence did Father or Mother object on hearsay grounds or argue that the Agency's evidence was incompetent. During arguments to the trial court, Mother discussed only the possible placements of V.D., and offered the possibility that V.D. be returned to the home with a safety plan excluding Father from the home. *See* N.T., 3/24/23, at 90. Father's counsel concurred in that request and presented no further arguments concerning the adjudication of dependency or the requested finding of abuse. *See id*. at 92.

Did the trial court err and/or abuse its discretion when it made a finding of abuse against [Father] where there was insufficient evidence to prove abuse?

Father's Brief at 4.

"[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the [trial] court's inferences or conclusions of law." *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). This Court will not overrule the findings of the trial court if they are supported by competent evidence. *See Interest of La.-Ra. W.*, 266 A.3d 1071, 1089 (Pa. Super. 2021). We review decisions in a dependency matter for an abuse of discretion. *See R.J.T.*, 9 A.3d at 1190.

Although the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6375, governs dependency proceedings, the Child Protective Services Law ("CPSL"), 23 Pa.C.S.A. §§ 6301-6388, controls determinations of child abuse. *See Interest of T.G.*, 208 A.3d 487, 490 (Pa. Super. 2019). The CPSL defines child abuse, in relevant part, as "intentionally, knowingly or recklessly . . . [c]reating a reasonable likelihood of bodily injury to a child through any recent act or failure to act." 23 Pa.C.S.A. § 6303(b.1)(5). A court must find child abuse by clear and convincing evidence. *See T.G.*, 208 A.3d at 490.

Father claims there was insufficient competent evidence for the trial court to find that abuse occurred. *See* Father's Brief at 8. He contends the testimony at the hearing established: (1) the January 17th incident involved

a verbal altercation involving Father and his cousin; (2) V.D. was not "actually present when the incident happened[;]" (3) Mother did not see Father with a handgun; and (4) it was Mother's adult daughter, B., who told Mother and V.D. that Father was holding a handgun. *Id*. at 8-9. Father baldly asserts, in his summary of the argument, that "the trial court considered hearsay evidence over the direct testimony of [Mother and V.D. at the hearing]" *Id*. at 7.

The trial court, in its Rule 1925(a) opinion, summarized the evidence presented at the hearing, including the responding police officer's testimony about what Mother told him, Mother's signed statement to police, and the Agency caseworker's testimony concerning V.D.'s reactions to, and initial description of the January 17th incident. *See* Trial Court Opinion, 5/11/23, at 8, 12-13 (citing, *inter alia*, N.T., 3/24/23, at 30-31, 58-59; Agency's Exhibit 1). The court acknowledged that Mother and V.D. recanted their initial reports of the January 17th incident. *See id*. at 9, 13. The court concluded that Mother's and V.D.'s recantations were incredible, particularly in light of Mother's prior statements to Officer Werner, her prior reports to Althoff, and her own testimony about the trauma suffered by V.D. after the January 17th incident. *See id*. at 15. The court instead credited the testimony from Officer Werner and Althoff concerning the January 17th incident. *See id*.

Following our review, we conclude Father's arguments merit no relief. Initially, we note that prior to this appeal, Father did not assert that the Agency had relied on incompetent evidence. *See* Pa.R.A.P. 302(a) (stating

that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"); *accord Interest of L.V.*, 209 A.3d 399, 418 (Pa. Super. 2019). Father did not object at the hearing to the trial court's admission of exhibits or the court's consideration of testimony from the responding officer or the Agency caseworker. *See* Pa.R.E. 103(a)(1)(A). Father's failure to raise a hearsay exception on the record deprived the Agency, as the proponent of the evidence, of the opportunity to assert a foundation to admit Mother's and V.D.'s prior statements as substantive evidence. Father's failure to object also deprived the trial court of the ability to rule on the admissibility of the evidence. Father's failure to object thus prevents this Court from conducting a meaningful review of the admissibility of the Agency's evidence.

Furthermore, Father's Rule 1925(b) statement asserted only that the evidence was insufficient to sustain finding of abuse; it did not specify that Father intended to challenge the competence of the evidence or the court's reliance on hearsay evidence. *See* Pa.R.A.P. 1925(b)(4)(ii), (vii); *accord In re A.B.*, 63 A.3d 345, 350 (Pa. Super. 2013) (noting that a vague Rule 1925(b) statement requiring a court to "guess what issues an appellant is appealing" impedes meaningful review) (internal citation and quotations omitted). Lastly, Father mentions "hearsay" in his appellate brief but does not outline any relevant rules of evidence, the exceptions to the general rule precluding hearsay, or which specific portions of the record should be deemed incompetent. *See* Pa.R.A.P. 2119(a) (requiring an argument be "followed by

such discussion and citation of authorities as are deemed pertinent"). Instead of developing any cogent legal arguments, Father essentially asserts error in the trial court's refusal to credit Mother's and V.D.'s recantation testimony at the hearing. *See* Father's Brief at 8-9.

Although Father arguably waived his claim, we conclude that the trial court had a sufficient, competent evidentiary basis to reject Mother's and V.D.'s recantations. Mother's written and signed statement clearly fell within an exception to the rule prohibiting the admission of hearsay. *See* Pa.R.E. 802, 803.1(1)(B) (discussing the prior inconsistent statement of a declarant witness exception application to a writing signed and adopted by the declarant); *accord Commonwealth v. Hanible*, 30 A.3d 426, 445-47 (Pa. 2011). Mother's written and signed statement to police provided a competent basis for the court to conclude that Father waved a handgun during the January 17th incident, Mother fled the house with V.D. and B., and Father threatened to kill Mother. *See* Agency's Exhibit 1 (Mother's statement to police signed and dated January 17, 2023).

Additionally, we note that testimony from the witnesses who observed V.D.'s emotional state after the January 17th incident was not hearsay. *See Commonwealth v. Johnson*, 838 A.2d 663, 673 (Pa. 2003) (noting that testimony based on personal observations are not hearsay). Here, such evidence included the observations by Officer Werner, Althoff, and Mother herself, that V.D., shortly after the January 17th incident, appeared shaken up, stared into a corner of a wall without speaking to Althoff shortly after the

incident, and, in fact, did not speak at all for two or three days after the incident. **See** N.T., 3/24/23, at 14, 32, 54. As noted by the trial court, such observations are consistent with V.D.'s having suffered trauma after the January 17th incident. **See** Trial Court Opinion, 5/11/23, at 15 (noting that V.D. was so "traumatized . . . that she did not speak for two or three days"). Such trauma belies V.D.'s hearing testimony that she slept through the January 17th incident and only heard about the incident from her sibling, B.

We conclude the foregoing evidence provided a competent, non-hearsay, basis for the trial court to reject Mother's and V.D.'s recantations at the hearing. **See La.-Ra. W.**, 266 A.3d at 1089. Father's broad argument that the court erred in discrediting Mother's and V.D.'s testimony, therefore, fails. Because Father provides no focused arguments concerning the competence of the remaining evidence presented at the hearing and does not otherwise contest the court's findings of abuse and the adjudication of dependency, we affirm the order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/2/2023